UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00161-FDW-DCK

| KAREN SUTTON, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) |
| | ) ORDER |
| CHARLOTTE-MECKLENBURG SCHOOLS, CHARLOTTE-MECKLENBURG SCHOOLS BOARD OF EDUCATION, and JULIE BABB, | ) |
| Defendants. | ) |

THIS MATTER is before the Court on Defendants Charlotte-Mecklenburg Schools, Charlotte-Mecklenburg Schools Board of Education, and Julie Babb's Motion to Dismiss Plaintiff's Complaint. (Doc. No. 4). Having considered the Motion, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss Plaintiff's Complaint for the reasons that follow.

I. PROCEDURAL BACKGROUND

Plaintiff Karen Sutton ("Plaintiff") commenced this action on December 8, 2017 in the Superior Court of Mecklenburg County, North Carolina. (Doc. No. 1-1). Plaintiff asserts claims for discrimination under Title VII, 42 U.S.C § 2000e-2 *et. seq.*, retaliation under Title VII, 42 U.S.C. § 2000e-3 *et. seq.*, vicarious liability/respondent superior, gross negligence, and negligent retention. (Doc. No. 1-1 at 22-26). Plaintiff also requests punitive damages and attorney's fees and costs. (Doc. No. 1-1 at 26-27). Defendants subsequently removed the action to this Court on April 2, 2018. (Doc. No. 1). On April 30, 2018, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). (Doc. No. 4).

Because Plaintiff appears *pro se*, the Court issued a Roseboro notice (Doc. No. 5) informing Plaintiff of the burden she carries in responding to Defendants' Motion and the deadline for responding to Defendants' Motion. Plaintiff was also informed that Plaintiff's failure to respond, "may result in Defendants being granted the relief they seek, that is dismissal of the Complaint." (Doc. No. 5 at 4). The deadline for Plaintiff's response has passed, and Plaintiff has not filed a response. Defendants' Motion is ripe for review.

## II. FACTUAL BACKGROUND

Plaintiff applied for and interviewed for a position with the Pre-K department of Charlotte-Mecklenburg Schools ("CMS") on or about March 2013. (Doc. No. 1-1 at 16). Plaintiff sought a position as a temporary part-time Pre-K Screener. (Doc. No. 1-1 at 16). In April 2013, Plaintiff was hired by Defendant Julie Babb, the Pre-K Director of CMS, at an hourly rate of twenty-one dollars and twenty-seven cents. (Doc. No. 1-1 at 16). Plaintiff was qualified for her position. (Doc. No. 1-1 at 16).

After accepting the position and commencing work, Plaintiff was informed she would be categorized as a "substitute" and only receive an hourly rate of twelve dollars and fifty-four cents. (Doc. No. 1-1 at 16). The reduced hourly rate was less than white employees with the same responsibilities and duties as Plaintiff. (Doc. No. 1-1 at 16). Plaintiff informed Defendant Babb of the discrepancy, and Defendant Babb after some delay submitted a notice or request to other departments based on the discrepancy on or about November 2013. (Doc. No. 1-1 at 16-17). The notice or request was enacted, resulting in Plaintiff receiving retroactive payment for salary discrepancies between November 2013 and January 2014. (Doc. No. 1-1 at 17). Plaintiff continued to request retroactive payment for salary discrepancies between her date of hire and November 2013, but her request was never granted. (Doc. No. 1-1 at 17).

At a staff meeting in the summer of 2014, Defendant Babb announced that there was a vacancy for a full-time Pre-K Screener. (Doc. No. 1-1 at 17). At the time of the announcement, the listing for the position had run and closed. (Doc. No. 1-1 at 17). The listing was posted as an instructional position due to added requirement in the job description of "birth through kindergarten certification" preferred. (Doc. No. 1-1 at 17). Pre-K screener positions are traditionally listed as non-instructional. (Doc. No. 1-1 at 17).

In September 2014, Plaintiff cooperated with CMS Employee Relations Investigator Donnie Simmons's investigation of racial discrimination against Defendant Babb. (Doc. No. 1-1 at 18). After her cooperation, management staff under Defendant Babb retaliated against Plaintiff. (Doc. No. 1-1 at 18). In October 2014, Plaintiff was informed that her services would not be required during the month of November 2014 due to a "mandatory hiatus policy." (Doc. No. 1-1 at 18). Plaintiff, the only black employee, was the only one banned from work; other white employees with the same title and classification continued working with no hiatus. (Doc. No. 1-1 at 19). Plaintiff was similarly informed in October 2015 that her services would not be needed in November 2015. (Doc. No. 1-1 at 19). Plaintiff was also informed that payroll issues delayed her return to work in December 2015. (Doc. No. 1-1 at 19). Plaintiff's white counterparts, also temporary Pre-K Screeners, worked without incident or interruption from payroll. (Doc. No. 1-1 at 19). Plaintiff asked to file a complaint but never received the form or packet. (Doc. No. 1-1 at 20). However, shortly thereafter, Defendant Babb informed Plaintiff she could return to work. In January 2016, Cher Holcomb and Defendant Babb informed Plaintiff she was not selected for the permanent position for which she had applied previously. (Doc. No. 1-1 at 20). The next day, an African-American male began working in the full time permanent position. (Doc. No. 1-1 at 20). Plaintiff expressed her concerns that she was "denied the position due to her compliance in the

active discrimination complaint against Ms. Babb" to Human Resources and her desire to file a formal complaint against Defendant Babb and Ms. Holcomb. (Doc. No. 1-1 at 20). She sent other complaints and notices to management, who either ignored or responded nonchalantly. (Doc. No. 1-1 at 21). Plaintiff's formal grievance email was forwarded to Employee Relations, but no action resulted. (Doc. No. 1-1 at 21).

In February 2016, Plaintiff requested an adjustment to her work schedule to accommodate caring for an ailing family member, but the request was denied. (Doc. No. 1-1 at 21). After contacting Human Resources, Plaintiff's schedule change request was approved. (Doc. No. 1-1). Plaintiff's white peers had permanent schedules based on their choosing and convenience. (Doc. No. 101 at 21).

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on or about July 29, 2016. (Doc. No. 1-1 at 21). Plaintiff received EEOC's notice of Right to Sue on September 11, 2017. (Doc. No. 1-1 at 22).

### III. STANDARD OF REVIEW

A. Fed. R. Civ. Pro. 12(b)(1)

Rule 12(b)(1) provides for dismissal when a federal court lacks jurisdiction over the subject matter of the lawsuit. Subject matter jurisdiction exists when the complaint raises a federal question under 28 U.S.C. § 1331 or diversity of citizenship under 28 U.S.C. § 1332. Lack of subject matter jurisdiction may be raised at any time either by a litigant, or by the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Mosley v. Wells Fargo Bank, N.A., 802 F. Supp. 2d 695, 698 (E.D.Va. 2011) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). The party seeking federal jurisdiction has the burden of proving

4

that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).[1]

B. Fed. R. Civ. Pro. 12(b)(2)

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence[.]" New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs, 886 F.2d at 676 (citation omitted). However, "[w]hen a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro Ar, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted). Under these circumstances, a court must "assume the credibility of [the plaintiff's] version of the facts[,]" "construe all relevant

---

[1] The Court of Appeals for the Fourth Circuit held, as follows:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to *de novo* appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir. 1989).

Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768-69.

pleading allegations in the light most favorable to the plaintiff[,]" "construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff,]" and "draw the most favorable inferences for the existence of jurisdiction." Id. at 558, 560 (citations omitted); Combs, 886 F.2d at 676.[2]

C. Fed. R. Civ. Pro. 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint"—"not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). The court accepts all well-pleaded allegations in the complaint as true and draws all reasonable factual inferences from those facts in the plaintiff's favor, id. at 244 (citations omitted); Mylan Labs., 7 F.3d at 1134, but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters

---

[2] In the Roseboro Notice, the Court informed the parties that it will not hold an evidentiary hearing at this time. Court also permitted Plaintiff to submit matters outside of the pleadings as Defendants had done.

6

properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

III. ANALYSIS

A. Title VII Claims

Defendants argue this Court lacks subject matter jurisdiction over Plaintiff's first and second cause of action for discrimination and retaliation under Title VII because Plaintiff failed to exhaust her administrative remedies. (Doc. No. 4-1 at 6).

Although 42 U.S.C. § 2000e-5(f)(3) grants subject matter jurisdiction to federal district courts over actions brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), Chris v. Tenet, 221 F.3d 648, 651 (4th Cir. 2000), "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim[,]" Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 138-40 (4th Cir.1995)). An EEOC charge must be filed by the plaintiff within "one hundred and eighty days *after the alleged unlawful employment practice occurred.*" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). A discrete retaliatory or discriminatory act, like termination or failure to promote, occurs "on the day that it 'happened.'" Id. at 110, 114. As a result, a plaintiff's charge as to that discrete act is timely only if the discrete act occurred 180 days prior to the filing of the charge. Id. at 113-114. In contrast, hostile environment claims, which are "based on the cumulative effect of individual acts[,]" id. at 115, are timely if "an act contributing to the claim occurs within the filing period," id. at 117. A claim that is not timely filed is barred and not actionable. Id. at 109, 113.

The EEOC charge also limits the scope of subsequent formal litigation to the charges themselves and any charges that would naturally arise from an investigation thereof. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). However, recognizing that lawyers generally do not prepare charges, courts liberally construe the charges. Id. The Fourth Circuit also recognizes that *pro se* EEOC claimants are entitled to a substantial amount of indulgence. Agolli v. Office Depot, Inc., 548 Fed. Appx. 871, 876 (4th Cir. 2013).

As alleged, Plaintiff filed her charge with the EEOC on or about July 29, 2016. (Doc. No. 1-1 at 21). Defendants have filed the EEOC Charge as Exhibit 1 to their Motion (the "Charge"). (Doc. No. 4-2). The Charge reflects the filing date of July 29, 2016 and discrimination based on race and color and retaliation. (Doc. No. 4-2). Liberally construing the two pages of particulars set forth in the Charge, the Court concludes that the scope of the Charge does not deprive this Court of jurisdiction over Plaintiff's allegation. (Doc. No. 4-2). However, some of the allegations in the Complaint and Charge arise before January 31, 2016, which is 180 days before the filing of the Charge. Plaintiff plead allegations concerning the discrepancy in her pay from November 2013 to January 2014, the posting of Full-Time Pre-K Screener position as instructional around May 2014, and the suspension of her work in November 2014, November 2015, and December 2015 due to a hiatus policy and payroll after cooperating in a discrimination investigation of Defendant Babbs. Discrimination or retaliation claims under Title VII based on discrete acts prior to January 31, 2016 are untimely and not actionable. However, other alleged acts of failure to hire or promote to a full-time position and denial of her adjustment to her work schedule as alleged occurred, on or about January 2016 and February 2016. Therefore, on this record, the Court cannot dismiss the Title VII claims in their entirety. Plaintiff has exhausted her administrative remedies as to some claims, providing this Court jurisdiction.

B. Title VII Claims against Defendant Babb

Defendants argue Plaintiff has not stated a claim under Title VII against Defendant Babb because Title VII does not impose liability on employees in their individual capacity. (Doc. No. 4-1 at 8). The Fourth Circuit in Lissau v. Southern Food Service, Inc. held "that supervisors are not liable in their individual capacities for Title VII violations." Abeles v. Metro. Wash. Airports Auth., 676 F. App'x 170, 177(4th Cir. 2017) (citing Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998)). As explained in Baird ex rel. Baird v. Rose,

> The enforcement provision of Title VII permits actions against an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C.A. § 2000e–5(b). Title VII and the ADA define an "employer" in pertinent part as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C.A. § 2000e(b) (West 1994); see 42 U.S.C.A. § 12111(5)(A) (West 1995). We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as "employers." See Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir.1998) (holding that supervisors cannot be held liable in their individual capacity under Title VII because they do not fit within the definition of an employer).

192 F.3d 462, 472 (4th Cir.1999). As reflected in the caption in the Complaint filed by Plaintiff, Babb has been sued in her individual capacity. (Doc. No. 1-1). Under the Fourth Circuit's precedent, Plaintiff cannot sue Babb in her individual capacity as currently alleged. Plaintiff has not alleged Babb is an employer. Therefore, to the extent Plaintiff has alleged claims under Title VII against Defendant Babb in her individual capacity, the Court dismisses the claims.

C. Sovereign Immunity

Defendants argue that sovereign immunity bars any of the state law claims against Defendant Charlotte Mecklenburg Schools Board of Education (the "Board"). (Doc. No. 4-1 at 8).[3] "As a general rule, the doctrine of governmental, or sovereign immunity bars actions against,

---

[3] "A motion to dismiss based on sovereign immunity is a jurisdictional issue" but whether an issue of "subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina." M Series Rebuild, LLC v. Town of Mt. Pleasant, 730 S.E.2d 254, 257 (N.C. Ct. App. 2012).

*inter alia*, the state, its counties, and its public officials sued in their official capacity." Herring v. Winston–Salem/Forsyth Cnty. Bd. of Educ., 529 S.E.2d 458, 461 (N.C. Ct. App. 2000) (citation omitted). "[A] county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." Magana v. Charlotte–Mecklenburg Bd. of Educ., 645 S.E.2d 91, 92 (N.C. Ct. App. 2007).

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42.

While admitting that the Board had excess liability insurance in 2017-2018, Defendants contend the insurance policy does not cover the claims alleged by Plaintiff and has provided the Affidavit of Daniel J. Pliska and the applicable policies. (Doc. No. 4-1 at 9-10; see also Doc. Nos. 4-3, 4-4, 4-5). Defendants contend the excess insurance policies do not waive governmental immunity because they only provide coverage if the Board paid the retention amount of $250,000 per claim or $2,750,000 per occurrence. (Doc. No. 4-1 at 10). The policy with the lower retention amount also contains language that this policy "provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable" and "is not intended by the Insured to waive its governmental immunity[.]" (Doc. No. 4-1; Doc. No. 4-4 at 21). As a result of this retention requirement and other language in the contract, Defendants argue that the North Carolina Court of Appeals decisions in Magana and subsequent decisions,

where the court found no waiver of governmental immunity, are indistinguishable from this case. (Doc. No. 4-1 at 10-11 (citing Doe v. Charlotte-Mecklenburg Board of Education, 731 S.E.2d 245, 247 (N.C. App. 2012); Irving v. Charlotte-Mecklenburg Board of Education, No. 13-34, 2013 WL 5508370 (N.C. App. Oct. 1, 2013)). In Magana, the court held:

> Our courts have strictly construed N.C.G.S. § 115C–42 against waiver. Hallman v. Charlotte–Mecklenburg Bd. of Educ., 124 N.C. App. 435, 438–39 477 S.E.2d 179, 181 (1996). The terms of the statute itself make it clear that immunity is waived only to the extent of the coverage obtained under an insurance policy. See N.C. Gen. Stat. § 115C–42 (2005) ("Such immunity shall be deemed to have been waived by the act of obtaining such insurance, *but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort*") (emphasis added). In this case, as noted above, the policy provides coverage for only those claims for which defendant Board is liable for damages in excess of $ 1,000,000.
>
> Even though plaintiffs seek damages in excess of $1,000,000, the policy provides that it will not indemnify the Board unless the Board has first paid $1,000,000 to the claimant. Since the Board has statutory immunity from liability for tort claims, it cannot be required to pay any part of the $1,000,000 self-insured amount and, therefore, the excess policy will provide no indemnification. The plaintiffs have argued that such a reading of the policy renders it meaningless, offering no coverage for any eventuality. We cannot agree. There are several instances where immunity is not available either because of federal or state statutes, or because of exceptions to the sovereign immunity doctrine. See, e.g., Smith, 289 N.C. at 320, 222 S.E.2d at 424 (abolishing state sovereign immunity in the contractual context). Those instances are not applicable here. Therefore, the trial court correctly concluded the Board has not waived its immunity as to the claims asserted by plaintiffs.

645 S.E.2d at 92-93. As in Magana, the applicable policies only provide excess coverage and exceptions to the sovereign immunity doctrine do not apply to the state law claims alleged by Plaintiff. Accordingly, the Court dismisses Plaintiff's third, fourth, and fifth cause of action of vicarious liability, gross negligence, and negligent retention against the Board.

D. Gross Negligence

Relying on a few district court opinions, Defendants argue Plaintiff has not stated a claim for gross negligence as Title VII preempts common law negligence claims and discrimination

alone does not amount to gross negligence. (Doc. No. 4-1 at 11-12). Defendants, however, have not cited any opinions from appellate courts for their position and have not discussed 42 U.S.C. § 2000e-7. Therefore, at this stage, the Court cannot conclude Plaintiff has failed to state a claim as a matter of law on the grounds raised by Defendants and denies Defendants motion to dismiss as to this claim without prejudice to Defendants' assertion of this argument at a later stage in the proceeding.

E. Punitive Damages

Defendants also argue the sixth claim for punitive damages should be dismissed because punitive damages cannot be recovered from a governmental entity. (Doc. No. 4-1 at 12). The North Carolina Supreme Court held "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages." Long v. City of Charlotte, 293 S.E.2d 101, 114-15 (N.C. 1982); see also Vt. Agency of Nat. Res. v. United States, 529 U.S. 765, 784 (2000); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Both CMS and the Board as governmental entities or municipal corporations are therefore immune. See N.C. Motorcoach Ass'n v. Guilford Cnty. Bd. of Educ., 315 F. Supp. 2d 784, 810 (M.D.N.C. 2004) (citing Ripellino v. N.C. Sch. Bds. Ass'n, 581 S.E.2d 88, 94 (N.C. Ct. App. 2003)). As Plaintiff has not cited any statutory provision to the contrary in the Complaint, the Court dismisses without prejudice the request for punitive damages as to the Board and Charlotte-Mecklenburg Schools.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED in part and DENIED in part (Doc. No. 4). Plaintiff's first and second causes of action under Title VII against Defendant Babb are dismissed without prejudice. Plaintiff's third, fourth, and fifth cause of action of vicarious liability, gross negligence, and negligent retention

12

against the Board are dismissed without prejudice. Plaintiff's request for punitive damages is dismissed without prejudice against the Board and Charlotte-Mecklenburg Schools. The remainder of Defendant's Motion is denied without prejudice to Defendants' right to reassert their arguments at a later stage in the proceeding.

IT IS SO ORDERED.

Signed: July 30, 2018

Frank D. Whitney
Chief United States District Judge